IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEU LOR, | No. 2:15-cv-0548-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's motion for summary judgment (Doc. 15). For the reasons discussed below, the court will grant plaintiff's motion and deny the Commissioner's motion for summary judgment.

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security on November 23, 2010, alleging an onset of disability of February 5, 2010, due to carpel tunnel right hand, left shoulder, anxiety and depression (Certified administrative record ("CAR") 74-75, 172-75, 198-99). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on March 26, 2013, before Administrative Law Judge ("ALJ") Bradlee S. Welton. In an August 29, 2013, decision, the ALJ concluded that plaintiff is not disabled[2] based

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential

on the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since February 5, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: status post right wrist fracture surgery, left shoulder tendinopathy and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can sit for six hours in an eight-hour workday. He can stand/walk with normal breaks for six hours in an eight-hour workday. He can occasionally climb ramps and stairs, kneel, balance, and stoop. He cannot crawl, crouch, or climb ladders, ropes, or scaffolds. He can occasionally reach overhead with the left upper extremity. He can occasionally handle, reach, and finger with the right major upper extremity. He should avoid working around moving machinery and unprotected heights. He can perform simple, repetitive tasks with limited public contact.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 3, 1969 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

evaluation process proceeds to step five. Id.

3

        10.       Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

        7.       The claimant has not been under a disability, as defined in the Social Security Act, from February 5, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(CAR 21-32). After the Appeals Council declined review on February 19, 2015, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

Plaintiff argues the ALJ erred in several ways: (1) treatment of medical opinions; (2) discrediting plaintiff's subjective claims; (3) determining plaintiff's residual functional capacity (RFC); and (4) relying on the testimony of the vocational expert (VE).

#### A.  MEDICAL OPINIONS

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff argues the ALJ erred by failing to accept his treating physician's opinion without providing specific and legitimate reasons for rejecting it.  Defendant counters that the ALJ's assessment was proper, that the weight given to the medical opinions was supported by substantial evidence.

The medical opinions at issue are plaintiff's treating physician, Dr. Ching, the state examining physician, Dr. Hoenig, and the state non-examining physicians, Drs. Acinas and Takach.  The ALJ gave great weight to the examining physician, Dr. Hoenig, and reviewing physician, Dr. Acinas, "as they are consistent with the claimant's discussed clinical history showing that the claimant's condition is controlled." (CAR 29).  But he gave little weight to Dr. Ching's opinion "as Dr. Ching reported that he had not treated the claimant since July 2012 . . . [and] his opinions are inconsistent with physical examinations conducted by treating sources." (CAR 30).

Plaintiff argues that Dr. Hoenig's opinion is not supported by substantial evidence, and relying on that opinion was erroneous, as Dr. Hoenig did not have the benefit of the latest x-ray of plaintiff's right wrist.  Plaintiff cites Dr. Hoenig's original report at CAR 514, wherein Dr. Hoenig stated he had form SSA 3441 to review.  Plaintiff fails to acknowledge the corrected report Dr. Hoenig submitted indicating he had form SSA 3441 and an x-ray of the right wrist.  (CAR 527).  Attached to this corrected report is the April 16, 2013 x-ray plaintiff contends was not reviewed.  Accordingly, the undersigned finds plaintiff's argument inaccurate and

unpersuasive.

As Dr. Hoenig was an examining physician whose opinion, supported by different independent clinical findings, contradicted plaintiff's treating physician's opinion, it was up to the ALJ to resolve the conflict, which he did. See Andrews, 53 F.3d at 1041. The undersigned finds no error in the ALJ's treatment of the medical opinions.

### B.   CREDIBILITY

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the "mere fact that a plaintiff has carried out certain daily activities . . . does not . . . [necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not

easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is "able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Plaintiff argues the ALJ erred in finding plaintiff not credible. He contends the ALJ failed to account for his impairment based on the evidence, thus his finding that plaintiff's condition was controlled and improved is not supported. In addition, he argues the reasons given for discounting his testimony were not clear and convincing. Finally, plaintiff contends the ALJ erred in discounting his son's third party statement as well.

Defendant counters that the reasons the ALJ provided for rejecting plaintiff's testimony were sufficient, as were the reasons given to discredit plaintiff's son's statement. More specifically, defendant argues plaintiff's subjective symptoms lacked support in the objective record, multiple physicians found plaintiff capable of work, and his allegations were inconsistent with treatment records. As to plaintiff's son's statement, the ALJ gave germane reasons for discrediting that statement, and any other reasons given would be considered harmless error.

The ALJ determined plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible . . . ." (CAR 27). In so finding, the ALJ stated that plaintiff's "allegations are inconsistent with [his] discussed clinical history showing that his condition is controlled." (CAR 27). He further stated:

> Treatment records reveal that the claimant reported improvement in right wrist pain (Ex. 2F/2). The claimant reported to treating sources that medications help and that there was improvement with medications (ex. 4F/3; 25F/5, 8, 18). He reported that his pain and mood were stable on medication (Ex. 25F/1, 3). The claimant reported that he had not participated in any outpatient psychiatric treatment (Ex. 7F/2). Records reveal that the claimant denied

9

depression to treating sources (Ex. 25F/14).

(CAR 27). The ALJ further determined both plaintiff's physical and mental status examinations revealed generally mild findings, he has documented improvement by treating sources, he has not complained of or received significant treatment for his right wrist in his most recent treatment records, and has not continuously taken pain medication. (CAR 28). In addition, the ALJ found plaintiff's "allegations inconsistent with medical opinions that show that the claimant is capable in spite of his condition." (CAR 28). Finally, the ALJ found that "although the claimant alleges that he cannot speak English, treatment records reveal that the claimant was noted to be capable of speaking English fairly well and he attended appointments without an interpreter." (CAR 29).

As to plaintiff's son's statement, the ALJ found the statement to be

> inconsistent with the claimant's medical history and the record exhibits. The severe limitations described are simply not borne out by the record from treating sources and the consultative examination. Furthermore, this statement cannot be considered an unbiased statement unaffected by the fact that Mr. Lor is the claimant's son and likely to agree with the claimant's alleged symptoms and limitations.

(CAR 29).

As to plaintiff's credibility, the undersigned finds the reasons provided by the ALJ to be sufficiently clear and convincing. As stated above, the ALJ can take several factors into consideration when determining a claimant's credibility, including inconsistent statements, inadequately explained failure to follow treatment, daily activities, work record, and physician's statements as to severity of symptoms. These are the factors the ALJ considered in making his credibility finding. The inconsistency in the statements he made to his treating providers, which is supported by the record, the inconsistent use of pain medication, and the physician's opinion that he is capable in spite of his condition, are all sufficient reasons. While plaintiff disagrees with the ALJ's interpretation of the evidence, the undersigned finds the ALJ's reasons to be supported by the evidence and the medical opinions of record.

As to plaintiff's son's statements, in determining whether a claimant is disabled,

an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

The undersigned agrees with the defendant that the reasons provided are germane to plaintiff's son's. The ALJ specifically determined the statements were not consistent with plaintiff's medical history and the record exhibits. Although he also reasoned that plaintiff's son may not be unbiased, if this reason given was inadequate, that would only amount to harmless error as the other reasons given were adequate. See Batson v. Commissioner of Social Security, 359 F.3d 1190, 1197 (9th Cir. 2004).

   **C.**  **RESIDUAL FUNCTIONAL CAPACITY**

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003). In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

Plaintiff argues the ALJ erred in failing to include additional mental limitations in his RFC based on the psychological consultative examiner's opinion. These limitations include a

11

fair limitation as to plaintiff's ability to accept instructions from supervisors, interact with coworkers and the public, complete a normal workday/workweek without interruption, and deal with stress and changes in the workplace.  In addition, Dr. Weesner determined he had a moderate limitation as to his ability to maintain attention and concentration for extensive periods of time.  Plaintiff contends that the ALJ accepted Dr. Weesner's opinion without reservation, but failed to include these additional limitations in his RFC.   He also contends that the ALJ failed to include his language limitations in the RFC but did not discredit the part of his testimony wherein he stated he speaks only a little English.  Thus a language limitation should have been included in the RFC.

Defendant counters that the ALJ properly accommodated plaintiff's mental health limitations by limiting plaintiff to simple, repetitive work with limited public contact.  This is supported by Dr. Lewis specifically finding plaintiff could perform unskilled work despite the limitations she assessed (citing CAR 389).

The ALJ stated:

> Consultative psychologist Jennifer Weesner, Ph.D., opined that the claimant had fair ability to perform simple and repetitive tasks as well as detailed and complex tasks.  His ability to accept instructions from a supervisor is fair.  His ability to interact with coworkers and the public is fair.  His ability to sustain an ordinary routine without special supervision is fair.  His ability to maintain regular attendance in the workplace is fair.  His ability to complete a normal workday/workweek without interruptions from a psychiatric condition is fair.  His ability to deal with stress and changes encountered in the workplace is fair.  The likelihood that the claimant would emotionally deteriorate is minimal to moderate (Ex. 7F).
>
> State agency psychologist Barbara Lewis, Ph.D., opined that the claimant could perform unskilled work (Ex. 11F).  On reconsideration, State agency psychiatrist Kay Cogbill, M.D., agreed (Ex. 21F).

(CAR 28-29).  The ALJ accepted these opinions, giving them "great weight as they are consistent with the claimant's discussed clinical history showing that the claimant's condition is controlled." (CAR 29).  The RFC then reflected the ALJ's acceptance of the medical opinions

12

with a limitation to performing simple, repetitive tasks with limited public contact.

Reviewing the opinions in the record, the ALJ accurately set forth Dr. Weesner's opinion in his opinion. Dr. Lewis, the state agency psychologist who reviewed plaintiff's medical records, translated Dr. Weesner's findings into a mental residual functional capacity assessment. Dr. Lewis opined that plaintiff is not significantly limited in most categories, but is moderately limited in his ability to understand, remember and carry out detailed instructions, and to maintain attention and concentration for extended periods of time. She then explains:

> A review of the objective and subjective evidence contained in the claimant's folder supports the following ratings and conclusions:
> Understanding and Memory - Ability to understand and remember detailed instructions (A3) may be moderately limited.
> Sustained Concentration and Persistence - Ability to carry out detailed instructions (5%) and ability to maintain attention and concentration for extended periods (B6) may be moderately limited.
> Social Interaction - Overall, the claimant's social interaction capacities are generally retained.
> Adaptation - Overall, the claimant's adaptive capacities are generally retained.
> SUMMARY: The claimant retains the ability to mentally perform at the level cited and discussed in this MRFC. While the evidence indicates the claimant does suffer some degree of limitation from mental health issues, they do not meet or equal a listing. Claimant is able to meet the basic mental demands of work on a sustained basis despite any limitations resulting from identified MDIs. Claimant appears capable of at least unskilled work.

(CAR 387-90).

The ALJ accepted Dr. Lewis' interpretation of Dr. Weesner's examination, and incorporated all of those limitations in the RFC. There is no conflict between the two opinions, nor did the ALJ err in incorporating these limitations into the RFC.

As for plaintiff's English speaking skills, the ALJ noted:

> that although the claimant alleges that he cannot speak English, treatment records reveal that the claimant was noted to be capable of speaking English fairly well and he attended appointments without an interpreter.

(CAR 29).

Plaintiff contends the ALJ erred in failing to incorporate this limitation without discrediting his testimony that he speaks only a little English and needed to communicate in Hmong. The undersigned disagrees. A reasonable reading of the ALJ's opinion is that the ALJ discredited plaintiff's testimony regarding his English speaking abilities. The ALJ set forth three things he discredited. First was that plaintiff's testimony was inconsistent with the treatment records, second that the allegations were inconsistent with the medical opinions, and finally that his English speaking skills are not supported. (CAR 27-29). These findings are in fact supported by the record. Plaintiff did attend some of his medical appointments with his kids to act as interpreters, but others he attended by himself. The medical providers were able to communicate in English with him. In addition, he testified that was able to communicate with English-speaking people a little, that he knows basic English but not the hard words. (CAR 68). As the ALJ discredited plaintiff's allegation as to his English skills, and given the discussion the ALJ and VE had regarding plaintiff's English speaking abilities at the hearing, the undersigned finds no error in not including such a limitation in the RFC, especially given the limited contact with public limitation.

### D. VOCATIONAL EXPERT TESTIMONY

At step five of the sequential evaluation process, once a claimant establishes he can no longer perform his past relevant work, the burden shifts to the Commissioner to establish the existence of alternative jobs available to the claimant, given the claimant's age, education, and work experience. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988) (citing Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986)). This burden can be satisfied by either applying the Medical-Vocational Guidelines ("Grids"), if appropriate, or relying on the testimony of a VE. See id. Hypothetical questions posed to a VE must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no

1  evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ
2  may pose to the expert a range of hypothetical questions based on alternate interpretations of the
3  evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be
4  supported by substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418,
5  422-23 (9th Cir. 1988). The testimony of a VE should generally be consistent with the DOT,
6  although neither "trumps" the other if there is a conflict.  See Massachi v. Astrue, 486 F.3d 1149,
7  1153 (9th Cir. 2007).  If there is an inconsistency between the vocational expert's testimony and
8  the job descriptions in the DOT, the ALJ must resolve the conflict.  See id. (citing SSR 00-4p).

9  Pursuant to Social Security Ruling (SSR) 00-4p, the Ninth Circuit has found the
10 ALJ is explicitly required to determine if a VE's testimony deviates from the DOT, and if so
11 there must be sufficient support for that deviation.  See id.  Specifically, the Court found:

> SSR 00-4p unambiguously provides that "[w]hen a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [*Dictionary of Occupational Titles*]."  SSR 00-4p further provides that the adjudicator "will ask" the vocational expert "if the evidence he or she has provided" is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation for any apparent conflict.

17 Id. at 1152-53 (emphasis in original).  Only after making such a determination, and obtaining an
18 explanation if necessary, can the ALJ rely on the testimony of a VE.

19 Plaintiff argues the ALJ erred in relying on the VE's testimony without inquiring
20 as to whether the VE's testimony is consistent with the DOT.  Plaintiff argues that the VE's
21 testimony as to the three jobs it would be possible for a person with plaintiff's limitations to
22 perform conflicts with the DOT.  Specifically, the three jobs all require frequent handling and
23 reaching, whereas he is limited to occasional, as well as language skills above his abilities.  The
24 ALJ failed to ask the VE whether his testimony was consistent with the DOT.  As there is a
25 conflict between plaintiff's RFC and the abilities required for the three jobs identified, the ALJ's
26 failure cannot be considered harmless.

Defendant argues there is no conflict between the VE's testimony and the DOT. Therefore, defendant contends that to the extent there is an error, it is harmless because there is no actual conflict. Even if there is a conflict, the defendant contends that the VE specifically testified that the number of jobs would be eroded due to plaintiff's limitations. So again, any failure of the ALJ to inquire would be harmless.

The Ninth Circuit has indicated such an error can be harmless. The Court identified two situations where such an error can be harmless: if there is no conflict or if the VE "provided sufficient support for her conclusion so as to justify any potential conflicts." Massachi, 486 F.3d at 1154 n.19 (citing Johnson v. Shalala, 60 F.3d 1428 (9th Cir. 1995).

Here, the ALJ found plaintiff had the RFC to perform light work, with additional exertional limitations, including only occasionally reaching overhead on the left and occasionally handle, reach, and finger on the right, plus limited to performing simple, repetitive tasks with limited public contact. The ALJ called a VE to testify at the hearing, and posed a hypothetical to the VE setting forth those limitations. After discussing plaintiff's English skills, the VE testified that such an individual could perform work citing three examples: ticket taker (DOT 344.667-010), parking lot attendant (DOT 915.473-010), and cashier (DOT 211.462-010). (CAR 63-70). The VE eroded the availability of such positions due to plaintiff's physical limitations and his basic English skills. However, the ALJ determined that even with the erosion, there are still a significant number of positions for each occupation provided. The ALJ also determined that the VE's testimony was consistent with the DOT.

The undersigned finds the VE's testimony to be unclear. The ALJ never specifically asked whether his testimony was consistent with the DOT, or to explain any deviations. While there was much discussion on the record as to plaintiff's limited English skills, and the VE eroded the number of jobs available to someone with plaintiff's physical limitations with only basic English skills, there are other apparent conflicts that were not addressed. As plaintiff argues, the positions require frequent handling and reaching, where

16

plaintiff is limited to only occasional.  It is possible that because plaintiff is only limited to occasional overhead reaching on the left, and occasional handling on the right, that the frequency of those abilities is sufficient for the positions.  However, the record is not clear on that issue.  Similarly, each of the positions require some reading and writing skills as well as speaking, and they each involve contact with people.  While the VE clearly eroded the availability of positions due to plaintiff's limited speaking skills, the requirement of reading, writing and dealing with people were not specifically addressed.  In addition, while the ALJ stated in his opinion that there was no conflict, and that the VE accommodated plaintiff's limitations by eroding the number of positions available, he fails to address the specific conflicts noted above.  As there is an apparent conflict between the VE's testimony and DOT requirements for the positions identified, the ALJ's failure to inquire cannot be considered harmless error.  Upon remand, the conflict between the positions identified by the VE and the DOT requirements must be resolved and explained.

## IV.  CONCLUSION

Based on the foregoing, the undersigned finds that the ALJ committed reversible error for failure to reconcile the conflict between the VE testimony and DOT requirements.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 14) is granted;
2. Defendant's cross-motion for summary judgment (Doc. 15) is denied;
3. This matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 16, 2017

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE